**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
(973) 596-4500

*Attorneys for Defendant*
*Equimine, Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, et al., <br><br> Plaintiffs, <br><br> v. <br><br> EQUIMINE, INC., RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*, <br><br> Defendants. | Civil Action No. 24-4261 <br><br> *Document electronically filed* |

---

**BRIEF OF DEFENDANT EQUIMINE, INC.
IN OPPOSITION TO PLAINTIFFS' MOTION
TO COMPEL PERSONAL JURISDICTION DISCOVERY**

---

## **TABLE OF CONTENTS**

                                                                          **Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 1

I.      PLAINTIFFS' FAILURE TO MEET AND CONFER WITH PROPSTREAM IS REASON ENOUGH TO DENY THE MOTION ............................................................ 2

II.    THE DISCOVERY REQUESTS OVERREACH AND ARE DISPROPORTIONATE TO THE NARROW JURISDICTIONAL INQUIRY ................ 3

III.   THE *CALDER* EFFECTS TEST IS NOT A VALID BASIS TO COMPEL ADDITIONAL DISCOVERY ..................................................................................... 5

IV.   PROPSTREAM'S DISCOVERY RESPONSES ARE NOT DEFICIENT ........................ 8

       A.      PropStream's Decision Not To Answer Certain Interrogatories Is Justified .......... 8

       B.      PropStream's Decision Not To Respond to Certain Requests for Production Is Justified ........................................................................................................ 10

CONCLUSION ..................................................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A. Neumann & Assocs., LLC v. NRC Realty & Capital Advisors, LLC*,
 Civ. No. 24-5754, 2024 U.S. Dist. LEXIS 215474 (D.N.J. Nov. 26, 2024)..............................7

*Aakash Dalal v. Clearview AI, Inc.*,
 Civ. No. 24-10380, 2025 U.S. Dist. LEXIS 118674 (D.N.J. May 1, 2025),
 *report and recommendation adopted*, 2025 U.S. Dist. LEXIS 117436 (D.N.J.
 June 20, 2025)........................................................................................................................7

*Antico v. Ram Payment, LLC*,
 No. 1:20-cv-12130, 2024 U.S. Dist. LEXIS 174303 (D.N.J. Sept. 26, 2024)..........................4

*Atlas Data Privacy Corp. v. We Inform, LLC*,
 Civ. No. 24-4037, 2024 U.S. Dist. LEXIS 126377 (D.N.J. Nov. 26, 2024)..............................7

*Briskin v. Shopify, Inc.*,
 135 F.4th 739 (9th Cir. 2025) ...........................................................................................6, 15

*In re Diisocyanates Antitrust Litig.*,
 MDL No. 2862, 2021 U.S. Dist. LEXIS 179413 (W.D. Pa. Sept. 21, 2021) ........................1, 4

*Dunn v. Parker*,
 No. 21-cv-17351, 2022 U.S. Dist. LEXIS 88445 (D.N.J. May 17, 2022)............................6, 7

*Hasson v. FullStory, Inc.*,
 114 F.4th 181 (3d Cir. 2024) ...............................................................................................5, 6

*IMO Indus., Inc. v. Kiekert AG*,
 155 F.3d 254 (3d Cir. 1998)................................................................................................6, 11

*Johnson v. City of Atl. City*,
 Civ. No. 05-4329, 2007 U.S. Dist. LEXIS 107150 (D.N.J. Mar. 7, 2007)...............................3

*Kabbaj v. Simpson*,
 547 F. App'x 84 (3d Cir. 2013) ..............................................................................................15

*Lincoln Benefit Life Co. v. AEI Life, LLC*,
 800 F.3d 99 (3d Cir. 2015)........................................................................................................3

*Lloyd-Jones v. Connolly*,
 Civ. No. 20-912, 2022 U.S. Dist. LEXIS 148894 (D.N.J. Aug. 19, 2022)...............................1

*Marten v. Godwin*,
 499 F.3d 290 (3d Cir. 2007)......................................................................................................5

*Mesadieu v. Martinez*,
 Civ. No. 18-842, 2023 U.S. Dist. LEXIS 70805 (D.N.J. Apr. 24, 2023) ..................................3

*Mithril GP Emp. Feeder LLC v. McKellar*,
 No. 19-cv-2144-RGA, 2020 U.S. Dist. LEXIS 104382 (D. Del. June 15, 2020).......................3

*Rieu v. RVT Wrangleboro Consumer Square, LLC*,
 No. 1:19-cv-18390-NLH-KMW, 2020 U.S. Dist. LEXIS 194027 (D.N.J. Oct.
 20, 2020) ...................................................................................................................................3

*RP Healthcare, Inc. v. Pfizer, Inc.*,
 Civ. No. 12-5129, 2017 U.S. Dist. LEXIS 162380 (D.N.J. Sept. 29, 2017) ......................10, 15

*Shuker v. Smith & Nephew, PLC*,
 885 F.3d 760 (3d Cir. 2018)......................................................................................................4

*Torre v. Kardooni*,
 Civ. No. 22-4693, 2022 U.S. Dist. LEXIS 228356 (D.N.J. Nov. 29, 2022),
 *report and recommendation adopted*, 2022 U.S. Dist. LEXIS 227622 (D.N.J.
 Dec. 19, 2022)..........................................................................................................................6

*TruePosition, Inc. v. LM Ericsson Tel. Co.*,
 Civ. No. 11-4574, 2012 U.S. Dist. LEXIS 29294 (E.D. Pa. Mar. 6, 2012)...............................4

*Vonbergen v. Liberty Mutual Insurance Co.*,
 705 F. Supp. 3d 440 (E.D. Pa. 2023) ........................................................................................6

*Walden v. Fiore*,
 571 U.S. 277 (2014)..................................................................................................................8

**Rules**

Fed. R. Civ. P. 1................................................................................................................................5

Fed. R. Civ. P. 12(b)(2)............................................................................................................3, 5, 7

Fed. R. Civ. P. 26(b)(1).................................................................................................................2, 4

L. Civ. R. 37.1...............................................................................................................................2, 3

Case 1:24-cv-04261-HB   Document 68   Filed 07/14/25   Page 5 of 20 PageID: 1802

Defendant Equimine, Inc. d/b/a PropStream ("PropStream") respectfully submits this brief in opposition to Plaintiffs' motion to compel personal jurisdiction discovery ("Motion").

## INTRODUCTION

In classic "give an inch, take a mile" fashion, Plaintiffs served thirty-nine (39) jurisdictional discovery requests on PropStream, seeking information spanning compliance audits and employee training to PropStream's receipt of and response to takedown requests under Daniel's Law. Some of the requests addressed by Plaintiffs' Motion are patently irrelevant, others very clearly go to ultimate issues in the case, and all of them have little if anything to do with whether this Court has personal jurisdiction over PropStream. Making matters worse, Plaintiffs brought the Motion without ever conferring with PropStream about its purportedly deficient responses or the primary theory on which the Motion now hinges – the *Calder* effects test.

At this point, with PropStream having meaningfully answered interrogatories and produced documents that squarely inform the personal jurisdiction inquiry, the Court should deny Plaintiffs' over-reaching, unjustified quest for more. Interests in efficiency, economy, and proportionality all favor that result.

## ARGUMENT

On a motion to compel, the moving party "bears the initial burden of showing the relevance of the requested information. The burden then shifts to the party resisting discovery to justify withholding it." *Lloyd-Jones v. Connolly*, Civ. No. 20-912, 2022 U.S. Dist. LEXIS 148894, at *18 (D.N.J. Aug. 19, 2022).[1] "The parties and the court have the collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." *In re Diisocyanates Antitrust Litig.*, MDL No. 2862, 2021 U.S. Dist. LEXIS 179413, at *12 (W.D. Pa.

---

[1] All internal quotation marks and citations are omitted unless otherwise noted.

1

Sept. 21, 2021) (quoting Fed. R. Civ. P. 26(b)(1), 2015 Advisory Comm. Notes). Putting aside that Plaintiffs, in many instances, fail to meet their initial burden, there is ample good reason to deny their Motion, as discussed below.

## I. PLAINTIFFS' FAILURE TO MEET AND CONFER WITH PROPSTREAM IS REASON ENOUGH TO DENY THE MOTION

As a threshold matter, the Motion should be denied for the simple reason that Plaintiffs failed to comply with Local Rule 37.1. Local Rule 37.1(b) specifically provides as follows:

> Discovery motions must be accompanied by an affidavit, or other document complying with 28 U.S.C. § 1746, certifying that the moving party has conferred with the opposing party in a good faith effort to resolve by agreement the issues raised by the motion without the intervention of the Court and that the parties have been unable to reach agreement. The affidavit, or other document complying with 28 U.S.C. § 1746, shall set forth the date and method of communication used in attempting to reach agreement.

L. Civ. R. 37.1(b)(1). Conspicuously absent from the declaration submitted by Plaintiffs' counsel is any reference to "a good faith effort to resolve by agreement the issues raised by the motion." Instead, the declaration merely states that "[o]n June 9, 2025, the parties met and conferred to resolve these disputes over discovery but remained at an impasse." (ECF No. 66-1, ¶ 8.)

In fact, Plaintiffs did not invite PropStream to the June 9 meet-and-confer (Decl. of Kevin R. Reich, ¶ 6 (submitted herewith)), despite the undersigned having indicated to Plaintiffs' counsel by reply email on June 6 his availability for such a call on June 9. (*Id.* ¶ 5.) Nor did Plaintiffs' counsel reach out subsequently to schedule a one-on-one call to confer about the contents of the omnibus deficiency letter that was sent at 11:39 P.M. on June 4, 2025. (*Id.* ¶¶ 4, 7.) In short, Plaintiffs made no effort, much less a good faith effort, in advance of the status conference with the Court on June 16, to explain to PropStream how, in their view, its responses to the interrogatories and document requests listed in Appendix A to the June 4 letter are deficient and

2

incomplete. Thus, at least as to PropStream, Plaintiffs shunned their obligation to try to resolve these disputes prior to seeking Court intervention.

Case law is clear that disregard for Local Rule 37.1 is grounds to deny a motion to compel. *See, e.g.*, *Mesadieu v. Martinez*, Civ. No. 18-842, 2023 U.S. Dist. LEXIS 70805, at *7 (D.N.J. Apr. 24, 2023) (holding that "failure to comply with . . . L. Civ. R. 37.1(b)(1) is a sufficient procedural basis upon which to deny Plaintiff's motion" to compel); *Rieu v. RVT Wrangleboro Consumer Square, LLC*, No. 1:19-cv-18390-NLH-KMW, 2020 U.S. Dist. LEXIS 194027, at *2-3 (D.N.J. Oct. 20, 2020) (noting that Court denied motion to compel one day after it was filed upon "holding that the motion did not comply with Local Rule 37.1"); *Johnson v. City of Atl. City*, Civ. No. 05-4329, 2007 U.S. Dist. LEXIS 107150, at *3 (D.N.J. Mar. 7, 2007) (denying motion to compel upon "finding that the parties failed to adequately meet and confer in good faith in an attempt to resolve this discovery dispute without court intervention as required by L. Civ. R. 37.1(b)(1)"). A similar result should obtain here.

## II. THE DISCOVERY REQUESTS OVERREACH AND ARE DISPROPORTIONATE TO THE NARROW JURISDICTIONAL INQUIRY

As courts in this Circuit routinely hold, "jurisdictional discovery should be narrowly tailored, and 'a few responses to interrogatories will often suffice.'" *See, e.g.*, *Mithril GP Emp. Feeder LLC v. McKellar*, No. 19-cv-2144-RGA, 2020 U.S. Dist. LEXIS 104382, at *4 (D. Del. June 15, 2020) (quoting *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 109 (3d Cir. 2015)). Plaintiffs nevertheless served on PropStream (and the other defendants who filed motions under Rule 12(b)(2)) a total of sixteen (16) interrogatories, as well as twenty-three (23) document requests that in all but two instances seek production of "***all*** documents ***reflecting or relating to***" a variety of expansive subjects that stray well beyond PropStream's contacts with New Jersey. These requests are self-evidently overbroad and far exceed the limited scope of ordinary

3

jurisdictional discovery. *See TruePosition, Inc. v. LM Ericsson Tel. Co.*, Civ. No. 11-4574, 2012 U.S. Dist. LEXIS 29294, at *14-15 (E.D. Pa. Mar. 6, 2012) (stating that jurisdictional discovery "is not nearly as intrusive as merits discovery" and requiring requests to be "specific and adequately tailored to the jurisdictional issue at hand").

Despite the sprawling and objectionable nature of much of this discovery, PropStream, in just one-month's time, provided fulsome answers to interrogatories and produced multiple pages of responsive documents that bear on the personal jurisdiction inquiry. Plaintiffs do not refute this; now they are trying to push the envelope to see how much more they can get. The attempt by Plaintiffs in their Motion to obtain additional information from PropStream – much of which goes to the merits of the case and thus is impermissible at this threshold stage – should be rejected. *See Antico v. Ram Payment, LLC*, No. 1:20-cv-12130, 2024 U.S. Dist. LEXIS 174303, at *6 (D.N.J. Sept. 26, 2024) ("Jurisdictional discovery should not . . . serve as a fishing expedition into the underlying merits, all while under the guise of jurisdictional discovery.").

Precisely because "jurisdictional discovery is not a license for the parties to engage in a fishing expedition," the Third Circuit has instructed "District Court[s to] take care to circumscribe the scope of discovery . . . to only the factual questions necessary to determine its jurisdiction." *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 n.20 (3d Cir. 2018). Indeed, "[t]his principle is all the more true after the 2015 amendments to the Federal Rules of Civil Procedure, which added a discussion of proportionality to Rule 26(b)(1)." *Id.* "Accordingly, a court may limit [jurisdictional] discovery if it is not proportional to the needs of the case." *In re Diisocyanates*, 2021 U.S. Dist. LEXIS 179413, at *11 (noting, too, that "the scope of relevant and proportionate jurisdictional discovery is necessarily more limited than merits discovery").

The information that Plaintiffs seek to compel from PropStream is grossly disproportionate to the discrete question of personal jurisdiction. Thus, consistent with the Third Circuit's directive, this Court should limit any further discovery by denying the Motion. The additional responses that Plaintiffs are pursuing are untethered to any viable theory of personal jurisdiction (as discussed below), plainly go to the merits of the case, and will inevitably undermine Rule 1's promise of a "speedy and inexpensive determination of [this] action." Fed. R. Civ. P. 1.

## III. THE *CALDER* EFFECTS TEST IS NOT A VALID BASIS TO COMPEL ADDITIONAL DISCOVERY

For the first time in their Motion, Plaintiffs advise that they are premising personal jurisdiction in large part on the *Calder* effects test.[2] Nowhere previously – not in the Complaint, not in their jurisdictional discovery requests, and not even in their claimed deficiency letter – do Plaintiffs make mention of the *Calder* theory.

To invoke the *Calder* effects test, a plaintiff must "plead facts establishing that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum; and (3) the defendant expressly aimed his tortious conduct at the forum." *Hasson v. FullStory, Inc.*, 114 F.4th 181, 187 (3d Cir. 2024). Crucially, "the effects test prevents a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state if the defendant did not expressly aim [its] conduct at that state." *Id.* at 191. For that reason, courts need not consider the first two prongs of the test unless the third prong is satisfied. *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007).

---

[2] As to why the traditional, purposeful-availment test is also not a valid basis to compel more jurisdictional discovery, PropStream incorporates by reference the contents of the supplemental brief it filed on March 18, 2025 (ECF No. 44), in support of the consolidated motion to dismiss under Rule 12(b)(2) that was filed on case docket 24-cv-4380, so as not to burden the Court with redundant briefing.

5

As to that third prong, Plaintiffs carry "an onerous burden" to show that PropStream expressly aimed its supposedly tortious conduct at New Jersey. *Torre v. Kardooni*, Civ. No. 22-4693, 2022 U.S. Dist. LEXIS 228356, at *11 (D.N.J. Nov. 29, 2022), *report and recommendation adopted*, 2022 U.S. Dist. LEXIS 227622 (D.N.J. Dec. 19, 2022). Indeed, to satisfy the "expressly aimed" prong under Third Circuit law, a plaintiff must "(1) show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and (2) point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *Dunn v. Parker*, No. 21-cv-17351, 2022 U.S. Dist. LEXIS 88445, at *14 (D.N.J. May 17, 2022) (quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998)).

Plaintiffs come nowhere close to alleging, as they must, that PropStream intentionally targeted its website at New Jersey. They concede as much when they assert that "the Complaints allege facts sufficient *to infer* that Defendants 'expressly aimed' their tortious activity at New Jersey." (Motion at 7 (emphasis added).) Beyond that, Plaintiffs' citation to *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025) (Motion at 7-8), suggests they do not think they have to allege facts related to express aiming. But that Ninth Circuit decision, to the extent it holds that knowledge alone of conduct aimed at the forum can satisfy the express aiming prong of the effects test, is not the law in the Third Circuit. *See Hasson*, 114 F.4th at 196 ("[W]hile a defendant's knowledge that the plaintiff is located in the forum is necessary to the application of *Calder*, that alone is insufficient to satisfy the targeting prong of the effects test.").[3] Plaintiffs' reliance on *Briskin* as a basis to invoke personal jurisdiction is wholly misplaced.

---

[3] Plaintiffs' additional citation to *Vonbergen v. Liberty Mutual Insurance Co.*, 705 F. Supp. 3d 440 (E.D. Pa. 2023) (Motion at 8), completely mischaracterizes that case as it quotes from a parenthetical about a Northern District of California opinion, not any reasoning by the Eastern District of Pennsylvania court.

More to the point, and directly applicable here, "the reach of a defendant's cyber activity . . . does not establish personal jurisdiction merely because that activity encompasses data belonging or related to individuals hailing from the forum state. Indeed, as *Hassan* [sic] held, even a defendant's knowledge or awareness that a particular state's residents will be affected will not suffice to satisfy the *Calder* test." *Aakash Dalal v. Clearview AI, Inc.*, Civ. No. 24-10380, 2025 U.S. Dist. LEXIS 118674, at *23 (D.N.J. May 1, 2025), *report and recommendation adopted*, 2025 U.S. Dist. LEXIS 117436 (D.N.J. June 20, 2025). Instead, to hurdle the third prong, Plaintiffs must allege that PropStream improperly disclosed covered persons' addresses or unpublished phone numbers "specifically *because* they live" in New Jersey. *Id.* at *24 (emphasis in original). Plaintiffs do not and cannot make such an allegation, which dooms their motion to compel based on the *Calder* theory. *Id.* at *26-27 (granting Rule 12(b)(2) motion to dismiss and denying request for jurisdictional discovery); *A. Neumann & Assocs., LLC v. NRC Realty & Capital Advisors, LLC*, Civ. No. 24-5754, 2024 U.S. Dist. LEXIS 215474, at *12-13 (D.N.J. Nov. 26, 2024) (granting Rule 12(b)(2) motion to dismiss under *Calder* effects test and declining to order jurisdictional discovery); *Dunn*, 2022 U.S. Dist. LEXIS 88445, at *14 (same where plaintiff "alleged that [defendant] committed an act of infringement against a New Jersey copyright holder, but has not demonstrated that [defendant] has taken any action whatsoever to target New Jersey itself").

Finally, although the Court need not reach the first prong of the *Calder* test – whether defendants committed an intentional tort – because the threshold third prong is not met, two points are worth noting. First, the statutory violation of Daniel's Law asserted in the Complaint, as this Court concluded, "does not mandate a specific intent standard of liability" but embodies "a negligence test." *Atlas Data Privacy Corp. v. We Inform, LLC*, Civ. No. 24-4037, 2024 U.S. Dist. LEXIS 126377, at *46-47 (D.N.J. Nov. 26, 2024). Second, the Complaint's fleeting reference to

7

"willful non-compliance" in the prayer for relief seeking punitive damages is unaccompanied by facts earlier on in the pleading describing this supposedly willful misconduct. Plaintiffs' reimagining of the Complaint, which in reality does not allege willful violations of Daniel's Law but merely parrots a legal conclusion (*see* Motion at 6), should not be credited and is one more reason why the *Calder* effects test is not a basis to compel further jurisdictional discovery.

## IV.    PROPSTREAM'S DISCOVERY RESPONSES ARE NOT DEFICIENT

### A.    PropStream's Decision Not To Answer Certain Interrogatories Is Justified

Of the sixteen (16) interrogatories that Plaintiffs served on PropStream, only six (6) are subject to the Motion – namely, Nos. 5, 6, 7, 8, 9, and 10. We address each in turn below.

**Interrogatory No. 5: Identify any entity with whom Defendant has since December 1, 2023 had any contracts, agreements, or arrangements in connection with or for the provision of any product, service, or digital platform that has published, provided access to, or otherwise made available information subject to Daniel's Law, including without limitation entities in New Jersey.**

Contrary to the Motion (at 16), PropStream did not assert in response to Interrogatory No. 5 that it has no contracts with entities in New Jersey. Rather, PropStream identified the lone contract it has with a New Jersey-based entity, which was entered into months after this litigation began and covers data that, to date, has not been integrated into the PropStream platform, as the response states. Any agreements with non-New Jersey entities are irrelevant to whether PropStream is subject to personal jurisdiction in this Court because, as the Supreme Court has held, "a defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction." *Walden v. Fiore*, 571 U.S. 277, 286 (2014). Moreover, the Complaint is utterly devoid of allegations even remotely suggesting that PropStream and some counterparty are operating "in concert" with each other such that an extension of the parent-subsidiary agency theory of personal jurisdiction might apply. (Motion at 16.)

**Interrogatory No. 6: Identify all sources from which Defendant obtained information related to information subject to Daniel's Law, including without limitation entities in New Jersey and any public records made available by the State of New Jersey, any agency or instrumentality of the State of New Jersey, any county, municipality, or other local government in New Jersey, or any agency or instrumentality thereof.**

Once again, Plaintiffs misread PropStream's response to Interrogatory No. 6, which clearly states that PropStream does not obtain data directly from any state or local government unit or agency within New Jersey and that the private entities from whom PropStream sources its data are not residents of New Jersey. Data sources outside New Jersey have no bearing on whether this Court has personal jurisdiction over PropStream for the same reasons articulated in connection with Interrogatory No. 5 above.

**Interrogatory No. 7: Identify any audit, review, or evaluation of Defendant conducted since December 1, 2023 by any officers, directors, employees, contractors, vendors, and other individuals or entities acting on Defendant's behalf for compliance with New Jersey law for any of Defendant's services, products, or digital platforms that publish, provide access to, or otherwise makes available information subject to Daniel's Law.**

PropStream, evidently like all but one other defendant, did not respond to Interrogatory No. 7. The extent to which PropStream complied with New Jersey law goes directly to the merits of this action. It has nothing to do with personal jurisdiction, and Plaintiffs' attempt to argue that it does is trying to fit a square peg into a round hole. Their demand for compliance audits is a quintessential, and wholly improper, fishing expedition.

**Interrogatory No. 8: Identify all officers, directors, employees, contractors, vendors, and other individuals or entities who, on Defendant's behalf, have reviewed, analyzed, processed, and/or responded to any Daniel's Law requests received since January 12, 2023.**

PropStream, again like evidently all but one other defendant, did not respond to Interrogatory No. 8. Once more this is merits discovery masquerading as jurisdictional discovery. The identity of persons involved in responding to takedown notices issued pursuant to Daniel's Law establishes no link between PropStream and New Jersey. Plaintiffs do not argue otherwise: they simply (and baldly) contend that such persons have "knowledge of the probable effects of

9

disclosure" on a covered person. (Motion at 18-19.) But, as discussed in Section III above, knowledge alone, in the absence of evidence that a defendant's activity specifically targeted the forum, does not satisfy the express aiming prong of the *Calder* test.

**Interrogatory No. 9: Describe all actions taken by Defendant to respond to any written requests under Daniel's Law received since January 12, 2023, including all communications with persons who sent nondisclosure requests to Defendant requesting redaction of their home addresses and phone numbers.**

**Interrogatory No. 10: Identify any address or phone number of a New Jersey resident that remained available in the database associated with any of Defendant's products, services, or digital platforms 10 days or more after Defendant received a nondisclosure request from a person asserting a right to nondisclosure under Daniel's Law, including any address or phone number of a New Jersey resident that is currently available in the database of information associated with any of Defendant's products, services, or digital platforms.**

PropStream addresses Interrogatory Nos. 9 and 10 together, both of which, again, the overwhelming majority of defendants likewise did not respond to. It is hard to imagine two more paradigmatic examples of merits discovery than these interrogatories, which go to the heart of this case and are grossly disproportionate to the jurisdictional inquiry at hand. Putting the cart before the horse, Plaintiffs are seeking discovery in hopes that it supports application of the *Calder* effects test without ever adequately pleading that the *Calder* test applies. This transparent end-run should be rejected. *See RP Healthcare, Inc. v. Pfizer, Inc.*, Civ. No. 12-5129, 2017 U.S. Dist. LEXIS 162380, at *9 (D.N.J. Sept. 29, 2017) (denying plaintiff's discovery request "because it is more akin to facts about liability rather than discovery about the personal jurisdiction issue").

### B. PropStream's Decision Not To Respond to Certain Requests for Production Is Justified

The Motion implicates sixteen (16) of the twenty-three (23) requests for production that Plaintiffs served on PropStream. Notably, for eight (8) of those sixteen (16) requests (RFP Nos. 5, 7, 10, 11, 12, 14, 15, and 17), not a single defendant evidently agreed to produce responsive documents, underscoring the impropriety of the requests at this jurisdictional discovery stage.

10

And, an additional four (4) requests (RFP Nos. 4, 6, 8, and 9) were not identified as being deficient in the June 4 deficiency letter – only now in the Motion. *Compare* ECF 66-3 at 7 of 17 *with* ECF 66-4, Appendix A.

**RFP No. 1.b: All documents reflecting or relating to Defendant's [m]arketing, advertising, soliciting, or offering of any product or service that publishes, provides access to, or otherwise makes available information subject to Daniel's Law, including without limitation in New Jersey or to New Jersey customers.**

In response to RFP No. 1.b, PropStream referred Plaintiffs to its social media sites, which were identified in connection with Interrogatory No. 4.[4]

**RFP No. 4: Produce all communications with or regarding any governmental entity in the State of New Jersey including the Department of Community Affairs and the Office of Information Privacy.**

In response to RFP No. 4 (one of the four RFPs not identified as deficient in the June 4 deficiency letter), PropStream stated that it does not believe that any responsive documents exist but reserved the right to supplement the response if necessary. There is nothing "equivocal" about that answer. (Motion at 24.)

**RFP No. 5: All documents reflecting or relating to Defendant's communications, correspondence, or interactions with Plaintiffs or any other New Jersey residents who sent Daniel's Law Requests to Defendant or any other entity associated with Defendant.**

PropStream, evidently like every other defendant, did not produce documents in response to RFP No. 5. While Plaintiffs assert that communications with New Jersey residents are relevant under *Calder* (Motion at 24), Third Circuit case law is clear that "the mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff is located there is insufficient to satisfy *Calder*." *IMO Indus.*, 155 F.3d at 263. Any such

---

[4] The Motion (at 22) asserts that PropStream did not produce documents in response to RFP No. 1.d, as well, but RFP No. 1.d does not appear in Appendix A to the proposed order (ECF 66-4). In any event, RFP No. 1.d is a catch-all to which other documents that PropStream did produce are responsive.

11

communications do not prove that New Jersey was ever the focal point of PropStream's operations, and thus they have no bearing on a personal jurisdiction analysis under *Calder*.

**RFP No. 6:    All documents reflecting or relating to Defendant's involvement with any related entity's communications, correspondence, or interactions with Plaintiffs or any other New Jersey residents who sent Daniel's Law Requests to Defendant or any other related entity.**

Contrary to the Motion (at 26), PropStream did not refuse to produce documents responsive to RFP No. 6. Rather, PropStream stated that it does not believe that any such documents exist. This was based on a good-faith interpretation of "related entity," which PropStream does not have.

**RFP No. 7:    All documents reflecting or relating to Defendant's policies, procedures, or practices for**

    **a**    **Processing, responding to, or complying with Daniel's Law Requests from New Jersey residents sent to Defendant or any other related entity.**

    **b.**    **Handling information related to New Jersey residents.**

PropStream, evidently like every other defendant, did not produce documents in response to RFP No. 7. Internal policies and procedures that may extend to handling information that belongs to New Jersey residents generally and/or responding to takedown requests under Daniel's Law more specifically have no conceivable tie to personal jurisdiction, Plaintiffs' far-fetched rationales notwithstanding. Such policies, to the extent they even exist, are neither tantamount to systematically serving a market in New Jersey nor evidence that PropStream is singling out New Jersey with its website (Motion at 27).

**RFP No. 8:    All documents reflecting or relating to Defendant's relationship, affiliation, or connection with any related entity, including but not limited to any agreements, contracts, joint ventures, partnerships, or common ownership or control, with operations in New Jersey.**

For similar reasons as in RFP No. 6, PropStream stated that it does not believe that any documents responsive to RFP No. 8 exist because PropStream has no relationship with a "related entity" operating in New Jersey.

12

**RFP No. 9:   All documents reflecting or relating to any complaints, claims, lawsuits, or investigations involving Defendant or any other related entity and any New Jersey residents or customers regarding any product or service that publishes, provides access to, or otherwise discloses personal information of New Jersey residents and where Defendant or any other related entity did not dispute the personal jurisdiction of the court in which those complaints, lawsuits, or investigations were based.**

Here again, the Motion misrepresents PropStream's response to RFP No. 9 (the fourth RFP, along with Nos. 4, 6, and 8, not included in the June 4 deficiency letter).  PropStream did not refuse to produce responsive documents (Motion at 28); it stated that it does not believe any responsive documents exist and reserved the right to supplement the response if necessary.

**RFP No. 10:  Any and all documents reflecting or relating to any training, education, or guidance provided by Defendant or any other related entity to its employees, agents, or representatives regarding any service that provides access to personal information of New Jersey residents, including but not limited to the legal requirements, obligations, and rights under the Fair Credit Reporting Act ("FCRA"), the New Jersey Identity Theft Prevention Act ("NJITPA"), the New Jersey Fair Credit Reporting Act ("NJFCRA"), or any other New Jersey state law or regulation.**

PropStream, evidently like every other defendant, did not produce documents in response to RFP No. 10.  As in RFP No. 7, whether or not PropStream provides training to its employees about compliance with New Jersey statutes is neither tantamount to systematically serving a market in New Jersey nor evidence that PropStream is singling out New Jersey with its website (Motion at 29).

**RFP No. 11:  Any and all documents reflecting or relating to any audits, reviews, or evaluations conducted by Defendant or any other related entity or any third-party regarding compliance under New Jersey law for any product or service that publishes, provides access to, or otherwise makes available information subject to Daniel's Law.**

RFP No. 11 is virtually identical to Interrogatory No. 7 (addressed above) and far exceeds the permissible scope of jurisdictional discovery for the same reasons articulated in connection with that interrogatory.

**RFP No. 12:  Any and all documents reflecting or relating to any opt-out, exclusion, or suppression options or mechanisms offered or provided by Defendant or any other related entity to any New Jersey residents or customers through any of Defendant's websites**

13

**identified in the Complaint, or any other product or service that publishes, provides access to, or otherwise discloses information subject to Daniel's Law.**

PropStream, evidently like every other defendant, did not produce documents in response to RFP No. 12. To say, as Plaintiffs do (Motion at 31), that because a defendant's website features an opt-out link, it necessarily follows that said defendant is aware of the potential harms that non-compliance with Daniel's Law could spawn is a bridge too far. Regardless, knowledge alone does not satisfy the express aiming prong of the *Calder* test under binding Third Circuit precedent.

**RFP No. 13: Any and all documents reflecting or relating to any internal or external communications, correspondence, or discussions by Defendant or any other related entity regarding the introduction and passage of Daniel's Law in New Jersey, including the applicability, scope, and effect of the law.**

PropStream, evidently like all but one other defendant, did not produce documents in response to RFP No. 13. What, if anything, PropStream communicated about the advent of Daniel's Law is very different from the actual conduct needed to confer personal jurisdiction in New Jersey. Plaintiffs contort the law almost beyond recognition in arguing that any such commentary constitutes express targeting under *Calder* or meaningful contact essential for purposeful availment. (Motion at 31-32.)

**RFP No. 14: All documents reflecting or relating to Defendant's receipt of nondisclosure requests pursuant to Daniel's Law, including the date of receipt, the manner of receipt, the number of requests, the contents of those requests, and Defendant's analysis of those requests.**

**RFP No. 15: All documents reflecting or relating to Defendant's response to Daniel's Law requests received from the Covered Persons and Individual Plaintiffs.**

PropStream, evidently like every other defendant, did not produce documents in response to RFP Nos. 14 and 15. And with good reason as this is intrusive merits discovery not in any way narrowly tailored to the jurisdictional inquiry. Which nondisclosure requests PropStream received and how it responded to them goes to the ultimate issue in the case. Whatever knowledge Plaintiffs contend PropStream became vested with as a result (Motion at 32-33) does not justify jurisdiction

under *Calder* and thus cannot warrant discovery pursuant to the effects test. *See Kabbaj v. Simpson*, 547 F. App'x 84, 86 n.5 (3d Cir. 2013) (affirming denial of requested jurisdictional discovery due to failure to make prima facie case for jurisdiction).

**RFP No. 16: All documents reflecting or relating to any changes to Defendant's processes regarding Daniel's Law nondisclosure requests or any other requests to remove personal information of New Jersey residents.**

PropStream, evidently like most defendants, did not produce documents in response to RFP No. 16. This request, like many others, seeks merits discovery under the guise of jurisdictional discovery. It is in many ways a subset of RFP No. 15, which seeks documents about PropStream's response to Daniel's Law notices. Nor does Plaintiffs' misplaced reliance on *Briskin* (Motion at 33) save this request.

**RFP No. 17: All documents reflecting or relating to the actions taken by Defendant to preserve documents in connection with this litigation, including without limitation records of every time Defendant has published, provided access to, or otherwise made available the home addresses or phone numbers of the Covered Persons and Individual Plaintiffs.**

PropStream, evidently like every other defendant, did not produce documents in response to RFP No. 17. Of course the mechanics by which documents are preserved for litigation have no bearing on the substantive merits of personal jurisdiction. The Court also should not compel a further response to this request because, like RFP Nos. 14 and 15, its focus on records relating to PropStream's disclosure of covered persons' home addresses or phone numbers implicates "facts about liability rather than discovery about the personal jurisdiction issue." *RP Healthcare*, 2017 U.S. Dist. LEXIS 162380, at *9.

**RFP No. 19: All documents reflecting or relating to the products or services that Defendant has delivered or otherwise made available to businesses and individuals with information that includes New Jersey addresses, and the total amount and percentage of Defendant's revenue from those services or products.**

It is not true, as Plaintiffs erroneously assert (Motion at 35), that PropStream refused to produce documents responsive to RFP 19. Rather, PropStream responded to RFP No. 19 by

15

referring to its responses to RFP Nos. 1-3, including the documents it produced pertinent to the PropStream platform and financial information related to same. In addition, in response to RFP No. 20, PropStream produced a document sufficient to show the individuals with New Jersey addresses who were subscribers to PropStream at year-end 2024. Accordingly, PropStream has fully complied with this request.

## CONCLUSION

For these reasons and those set forth in the other defendants' oppositions, PropStream respectfully submits that Plaintiffs' motion to compel jurisdictional discovery should be denied.

Dated: July 14, 2025  
Newark, New Jersey

    s/ Kevin R. Reich  
Frederick W. Alworth  
Kevin R. Reich, Esq.  
**GIBBONS P.C.**  
One Gateway Center  
Newark, New Jersey 07102-5310  
(973) 596-4500  
falworth@gibbonslaw.com  
kreich@gibbonslaw.com  
*Attorneys for Defendant Equimine, Inc.*