**FBT GIBBONS LLP**
One Gateway Center
Newark, NJ 07102-5310
(973) 596-4500

*Attorneys for Defendant*
*Equimine, Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, et al., | Civil Action No.  24-4261 |
| | *Document electronically filed* |
| Plaintiffs, | |
| v. | |
| EQUIMINE, INC., RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*, | |
| Defendants. | |

---

## REPLY BRIEF OF DEFENDANT EQUIMINE, INC.
## IN FURTHER SUPPORT OF MOTION TO DISMISS
## FOR LACK OF PERSONAL JURISDICTION

---

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ....................................................................... ii

PRELIMINARY STATEMENT ...............................................................1

ARGUMENT ............................................................................................3

I.    PLAINTIFFS FAIL TO ESTABLISH SPECIFIC JURISDICTION UNDER THE TRADITIONAL "MINIMUM CONTACTS" TEST.............3

    A.    Plaintiffs Cannot Demonstrate Purposeful Availment.........................4

    B.    Plaintiffs' Claims Do Not "Arise Out of" PropStream's Alleged Contacts with New Jersey ...................................................................8

II.    THE "EFFECTS" TEST DOES NOT APPLY BUT, IN ANY EVENT, PROVIDES NO BASIS FOR JURISDICTION OVER PROPSTREAM ..........................................................................................11

    A.    The Claims Asserted Are Not Intentional Torts .................................11

    B.    Plaintiffs Fail to Demonstrate That Any Alleged Tortious Conduct by PropStream Was Expressly Aimed at New Jersey .........13

CONCLUSION .......................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aakash Dalal v. Clearview AI, Inc.*,
    2025 U.S. Dist. LEXIS 118674 (D.N.J. May 1, 2025)........................................8

*Bellator Sport Worldwide, LLC v. Zuffa, LLC*,
    2011 U.S. Dist. LEXIS 162471 (D.N.J. May 16, 2011)......................................5

*Benitez v. JMC Recycling Sys., Ltd.*,
    97 F. Supp. 3d 576 (D.N.J. 2015)........................................................................5

*Bristol-Myers Squibb Co. v. Superior Court of Cal.*,
    582 U.S. 255 (2017)...........................................................................................10

*Ciolli v. Iravani*,
    651 F. Supp. 2d 356 (E.D. Pa. 2009).................................................................15

*CoachSource, LLC v. Coachforce*,
    2019 U.S. Dist. LEXIS 51561 (D.N.J. Mar. 27, 2019) .......................................4

*Delong v. PHE, Inc.*,
    2025 U.S. Dist. LEXIS 164060 (E.D. Pa. Aug. 25, 2025) ..................................9

*Doe v. Yardi Sys. Inc.*,
    2024 U.S. Dist. LEXIS 56509 (C.D. Cal. Mar. 27, 2024)...................................6

*D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*,
    566 F.3d 94 (3d Cir. 2009) ..................................................................................7

*Foster v. Digit. Safety Prods., LLC*,
    2025 U.S. Dist. LEXIS 98723 (W.D. Va. May 23, 2025)....................................9

*Hasson v. FullStory, Inc.*,
    114 F.4th 181 (3d Cir. 2024) .............................................................3, 8, 11, 14

*Hawkins v. MyHeritage Ltd.*,
    2025 U.S. Dist. LEXIS 162604 (S.D. Ohio Aug. 21, 2025) ...............................6

*IMO Indus. v. Kiekert AG*,
    155 F.3d 254 (3d Cir. 1998) ..............................................................................14

*Jackson v. Genuine Data Servs., LLC*,
  2022 U.S. Dist. LEXIS 14682 (E.D. Va. Jan. 26, 2022) ....................................6

*Johnson v. TheHuffingtonPost.com, Inc.*,
  21 F.4th 314 (5th Cir. 2021) ............................................................5

*Kelley v. Am. Checked, Inc.*,
  2022 U.S. Dist. LEXIS 135481 (E.D. Va. July 29, 2022)..................................6

*Kim v. Korean Air Lines Co.*,
  513 F. Supp. 3d 462 (D.N.J. 2021) .....................................................8

*M.H. & J.H. v. Omegle.com, LLC*,
  2021 U.S. Dist. LEXIS 52427 (D.N.J. Mar. 19, 2021) ....................................5

*Marten v. Godwin*,
  499 F.3d 290 (3d Cir. 2007) ..........................................................8, 13

*Moran v. Hawthorne Police Dep't*,
  2025 U.S. Dist. LEXIS 48794 (D.N.J. Mar. 18, 2025) ...................................12

*Muto v. Fenix Int'l Ltd.*,
  2024 U.S. Dist. LEXIS 83275, 2024 WL 2148734 (C.D. Cal. May
  2, 2024) ................................................................................7

*In re N.J.A.C. 12:17-2.1*,
  450 N.J. Super. 152 (App. Div. 2017) ................................................12

*Narco Avionics, Inc. v. Sportsman's Market, Inc.*,
  792 F. Supp. 398 (E.D. Pa. 1992) ....................................................13

*Oyebanji v. Palmetto Vacation Rentals LLC*,
  2021 U.S. Dist. LEXIS 159743 (D.N.J. Aug. 20, 2021) ..................................4

*Pete v. Facebook Data Breach*,
  2025 U.S. Dist. LEXIS 180875 (E.D. Tex. Sep. 15, 2025)...............................5

*Remick v. Manfredy*,
  238 F.3d 248 (3d Cir. 2001) ...........................................................3

*Ryan v. Napier*,
  425 P.3d 230 (Ariz. 2018) ............................................................12

*Soelect, Inc. v. Hyundai Motor Co.*,
    2024 U.S. Dist. LEXIS 172599 (N.D. Cal. Sep. 24, 2024) ................................14

*Stern v. Aracari Project*,
    2026 U.S. Dist. LEXIS 30425 (E.D. Pa. Feb. 12, 2026) ....................................7

*Toys "R" Us, Inc. v. Step Two, S.A.*,
    318 F.3d 446 (3d Cir. 2003) ....................................................................1, 4, 11

*Walburn v. Rovema Packaging Machs., L.P.*,
    2008 U.S. Dist. LEXIS 25369 (D.N.J. Mar. 28, 2008) ....................................14

*Walden v. Fiore*,
    571 U.S. 277 (2014) ........................................................................................13

*Williams v. Flat Cay Mgmt., LLC*,
    2023 U.S. Dist. LEXIS 45245 (D.V.I. Mar. 17, 2023) ....................................12

*Wurth Adams Nut & Bolt Co. v. Seastrom Mfg. Co.*,
    2015 U.S. Dist. LEXIS 44456 (D.N.J. Apr. 6, 2015) .........................................5

## Statutes

Daniel's Law ...........................................................................................1, 11, 12, 14

N.J.S.A. 56:8-166.1 .......................................................................................................9

## PRELIMINARY STATEMENT

Plaintiffs' brief in opposition to the motion to dismiss for lack of personal jurisdiction filed by Defendant Equimine, Inc. d/b/a PropStream ("PropStream") readily concedes that this Court lacks general jurisdiction over PropStream, leaving only specific jurisdiction as a possible basis for haling PropStream into this forum. However, plaintiffs cannot establish the necessary elements to subject PropStream to specific jurisdiction in New Jersey under either the *Calder* "effects" test or the traditional "minimum contacts" framework.

As this Court has already held, plaintiffs' claims under Daniel's Law sound in negligence – not intentional tort. That finding alone forecloses reliance on *Calder*, which applies only where a plaintiff alleges an <u>*intentional tort*</u>, expressly aimed at the forum, causing harm the defendant knew would be felt in the forum. Because plaintiffs' claims are not intentional torts, *Calder* is inapplicable as a matter of law.

This narrows the Court's inquiry to the "minimum contacts" test, which requires plaintiffs to demonstrate that PropStream "purposefully avail[ed] itself" of New Jersey, that plaintiffs' claims "'arise out of or relate to' at least one of those activities," and that asserting personal jurisdiction comports with fair play and substantial justice. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003). But plaintiffs' showing falls well short of these requirements. Plaintiffs do not dispute that PropStream is not registered to do business in New Jersey, has no

1

employees in New Jersey, does not own or lease any property in New Jersey, does not maintain an office or other facility in New Jersey, and does not have a mailing address or telephone listing in New Jersey. *See* Declaration of Brian Tepfer, ECF No. 44-1 ("Tepfer Decl.") ¶¶ 6-7, 10. In fact, after having been afforded the opportunity to take jurisdictional discovery, all plaintiffs have been able to point to is PropStream's website which is accessible nationwide and provides publicly available real estate data from all fifty states. PropStream does not contract with any New Jersey-based entity to source its data and does not engage in any direct marketing that targets New Jersey and its residents more than any other state. *Id.* ¶¶ 9, 12. Such generalized, non-targeted internet accessibility does not constitute purposeful availment and cannot establish minimum contacts with this forum.

In any event, even if the alleged contacts identified by plaintiffs were sufficient to show purposeful availment (they are not), plaintiffs' claims do not arise out of or relate to those contacts. Plaintiffs' claims arise out of their non-disclosure requests, which were (allegedly) sent by email to privacyinquiry@propstream.com. Notably, none of the purported 19,399 takedown requests were received by PropStream. However, if they were, those emails would have been transmitted to servers that PropStream maintains outside of New Jersey and addressed by employees located outside of New Jersey.

Plaintiffs have not come close to establishing the minimum contacts required to hale PropStream into this forum. With no jurisdictional foothold whatsoever, dismissal is not just appropriate—it is unavoidable. On this record, and for the additional reasons that follow, PropStream's motion to dismiss for lack of personal jurisdiction should be granted.

## ARGUMENT

### I.   PLAINTIFFS FAIL TO ESTABLISH SPECIFIC JURISDICTION UNDER THE TRADITIONAL "MINIMUM CONTACTS" TEST

Even with the benefit of jurisdictional discovery, plaintiffs cannot show that PropStream purposefully availed itself of the privilege of conducting activities in New Jersey and that plaintiffs' claims arise out of PropStream's contacts in the state. *See Hasson v. FullStory, Inc.*, 114 F.4th 181, 193 (3d Cir. 2024). Plaintiffs' argument is that PropStream's website, which contains property data from all fifty states and targets a national market, renders PropStream subject to personal jurisdiction in New Jersey because PropStream collected property information about New Jersey and attracted subscribers with New Jersey billing addresses. However, courts in the Third Circuit and elsewhere have repeatedly held that "the mere posting of information…on an Internet website does not confer nationwide personal jurisdiction." *Remick v. Manfredy*, 238 F.3d 248, 259 n.3 (3d Cir. 2001). Nor does a defendant purposefully avail itself of the privilege of conducting activities within the forum State by operating a website or transacting business on a website that is

3

available nationwide. *See CoachSource, LLC v. Coachforce*, 2019 U.S. Dist. LEXIS 51561, at *11 (D.N.J. Mar. 27, 2019) (finding no specific jurisdiction where the evidence merely amounted to a website "available to potential customers nationwide."); *Oyebanji v. Palmetto Vacation Rentals LLC*, 2021 U.S. Dist. LEXIS 159743, at *7 (D.N.J. Aug. 20, 2021) (noting that the fact that a defendant "transacts its business on a website that can potentially be accessed by New Jersey residents…does not change the calculus, and courts in this district have squarely rejected that argument."). "Rather, there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." *Toys "R" Us, Inc.*, 318 F.3d at 454. Plaintiffs falls markedly short of the showing required by the Third Circuit.

### A.    Plaintiffs Cannot Demonstrate Purposeful Availment

PropStream is an online provider of publicly available real estate data that covers all fifty states and is accessible nationwide. Despite the fact that PropStream obtains property data from every state and that its national reach has resulted in subscribers throughout the country, plaintiffs claim that the purposeful availment element is satisfied by PropStream's (1) "[p]urposeful acquisition and retention of forum-specific data," and (2) █████████████████████████████████

█████████ *See* ECF No. 91 ("Opposition" or "Opp. Br.") at 29. Neither supports plaintiffs' claim of purposeful availment.

Initially, plaintiffs' arguments seek to exploit PropStream's national footprint. But "targeting the national market is *not* enough to impute jurisdiction to all the forum states." *Benitez v. JMC Recycling Sys., Ltd.*, 97 F. Supp. 3d 576, 583 (D.N.J. 2015) (citation omitted) (emphasis in original). Afterall, "[t]o target every user everywhere…is to target no place at all." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 321-322 (5th Cir. 2021). Instead, "the facts must demonstrate that the website targeted" the forum. *M.H. & J.H. v. Omegle.com, LLC*, 2021 U.S. Dist. LEXIS 52427, at *7 (D.N.J. Mar. 19, 2021). A plaintiff must present "evidence suggesting that Defendant's website is targeted more specifically to New Jersey customers than those of any other state." *Wurth Adams Nut & Bolt Co. v. Seastrom Mfg. Co.*, 2015 U.S. Dist. LEXIS 44456, at *5-6 (D.N.J. Apr. 6, 2015); *Bellator Sport Worldwide, LLC v. Zuffa, LLC*, 2011 U.S. Dist. LEXIS 162471, at *14 (D.N.J. May 16, 2011) ("the websites do not purposefully target New Jersey specifically over any other State or country."). Plaintiffs have pointed to _nothing_ to suggest – much less establish – that PropStream's website targets New Jersey customers more than other states.

PropStream collects the same type of property information for all fifty states – New Jersey is not targeted. *See Pete v. Facebook Data Breach*, 2025 U.S. Dist.

5

LEXIS 180875, at *10 (E.D. Tex. Sep. 15, 2025) ("Meta's collection and monetization of its users' data" operates "nationwide" and are "not targeted specifically to Texas," but the fact that "they also occur in Texas does not show purposeful direction there."); *Kelley v. Am. Checked, Inc.*, 2022 U.S. Dist. LEXIS 135481, at *15-16 (E.D. Va. July 29, 2022) ("Obtaining data from many states and preparing background checks on individuals throughout the country, without targeting Virginia, does not constitute purposeful availment."). Further, PropStream does not "reach into" New Jersey to obtain information on New Jersey properties, but rather sources its public records information ████████████████████ ████████████████████ *See, e.g., Jackson v. Genuine Data Servs., LLC*, 2022 U.S. Dist. LEXIS 14682, at *21 (E.D. Va. Jan. 26, 2022) (finding no purposeful availment where defendants collected bulk public record filed from a third-party data collection vendor).[1]  Thus, PropStream's "acquisition and retention of forum-specific data" does not constitute minimum contacts with New Jersey.

---

[1] *See also Doe v. Yardi Sys. Inc.*, 2024 U.S. Dist. LEXIS 56509, at *8 (C.D. Cal. Mar. 27, 2024) ("RentGrow's actions—contracting Cleara to obtain California public records—are far too attenuated from any contacts with California. By obtaining public records from California, Cleara, not RentGrow, purposefully directed its activities at California."); *Hawkins v. MyHeritage Ltd.*, 2025 U.S. Dist. LEXIS 162604, at *10 (S.D. Ohio Aug. 21, 2025) (finding no purposeful availment where records were obtained from "'U.S. Public Records Index'— not from an Ohio-specific source.").

Similarly, "contacts arising from an online, subscription-based publication—without more—do not show" that defendants deliberately targeted the forum state. *Stern v. Aracari Project*, 2026 U.S. Dist. LEXIS 30425, at *6 n.4 (E.D. Pa. Feb. 12, 2026); *see also, e.g., Muto v. Fenix Int'l Ltd.*, 2024 U.S. Dist. LEXIS 83275, 2024 WL 2148734, at *4 (C.D. Cal. May 2, 2024) (finding plaintiffs' assertions that a significant number of California residents visited and purchased subscriptions through the website are insufficient to demonstrate defendant exhibited an intent to cultivate an audience in the forum). PropStream's website targets a national market and the fact that PropStream was able to obtain a modest number of subscribers with New Jersey billing addresses is, at best, "merely [] a derivative benefit of its successful attempt to exploit the United States as a national market." *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 103-04 (3d Cir. 2009). Absent some targeting of the forum, purposeful availment cannot be shown.

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

sustain plaintiffs' burden to demonstrate that PropStream purposefully availed itself of the privilege of conducting activities in New Jersey. In the absence of any purposeful availment, plaintiffs cannot establish specific jurisdiction under the minimum contacts test.

**B.    Plaintiffs' Claims Do Not "Arise Out of" PropStream's Alleged Contacts with New Jersey**

Even if plaintiffs could show that PropStream purposefully availed itself of the privilege of doing business in New Jersey through minimum contacts, "it is not enough for a defendant to have general contacts with a state—the contacts must relate to the claim." *Kim v. Korean Air Lines Co.*, 513 F. Supp. 3d 462, 470 (D.N.J. 2021). "[T]he plaintiff must show his or her claims 'arise out of or relate to' at least one those contacts or activities." *Aakash Dalal v. Clearview AI, Inc.*, 2025 U.S. Dist. LEXIS 118674, at *10 (D.N.J. May 1, 2025) (quoting *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007)).  This element requires the plaintiff to establish a "strong relationship among the defendant, the forum, and the litigation." *Hasson*, 114 F.4th at 193 (citation omitted).  Here, the only contacts that plaintiffs identify are PropStream's acquisition and retention of New Jersey public records and

███████████████████████████████████████████████████

███████████████████

Of course, plaintiffs do not allege anything untoward about PropStream's aquisition of public information. Indeed, plaintiffs readily concede that their claims are not "triggered" by PropStream's acquisition of New Jersey-specific data, but rather only after defendants "receive a New Jersey nondisclosure request and then knowingly fail to take any action within the ten-day statutory period." Opp at 7. Thus, plaintiffs' claims do not "arise out of" PropStream's collection of public

8

information about New Jersey properties. *See Foster v. Digit. Safety Prods., LLC*, 2025 U.S. Dist. LEXIS 98723, at *9 (W.D. Va. May 23, 2025) ("Because Foster does not allege that DSP did anything wrong in the manner in which it collected Virginia public records information, her claims do not 'arise out of' that activity.").

Nor do the claims arise out of the subscriptions sold to customers with New Jersey billing addresses. Plaintiffs' claims are not that any subscriber accessed or viewed information related to any covered person after receipt of a nondisclosure request, but rather that such information "remains 'available or viewable within a searchable list or database' or otherwise made available." Complaint at ¶ 60; *see also id.* ¶ 50 ("'Disclose'…shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed.") (quoting N.J.S.A. 56:8-166.1). In other words, plaintiffs' claims exist regardless of whether PropStream had any subscribers within the State of New Jersey. *See Delong v. PHE, Inc.*, 2025 U.S. Dist. LEXIS 164060, at *27-28 (E.D. Pa. Aug. 25, 2025) ("[T]he alleged wiretapping and data capture…occurs regardless of whether the customer completes a sale. Thus, the contacts from the product sales lack the 'strong relationship among the defendant, the forum, and the litigation' required for specific personal jurisdiction."). Therefore, plaintiffs' claims do not arise out of or relate to PropStream's New Jersey subscribers.

The only thing that plaintiffs identify that could possibly have any connection to the claims asserted is PropStream's "retention of forum-specific data" (Opp. at 29) after receipt of a takedown request, but plaintiffs fail to link this retention to the forum. Indeed, PropStream's servers are not located in New Jersey – so any emailed takedown requests would have been transmitted elsewhere, addressed by personnel employed elsewhere and ultimately removed from the website hosted elsewhere.[2]

The "arising out of" requirement cannot be understated because, absent this connection, the minimum contacts test becomes "a loose and spurious form of general jurisdiction," which the Supreme Court expressly cautioned against. *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 582 U.S. 255, 264 (2017). Thus, in the absence of any connection between PropStream, its purported contacts in New Jersey and the forum, plaintiffs cannot demonstrate that its claims arise out of or related to any alleged contact with New Jersey sufficient to subject PropStream to personal jurisdiction in New Jersey.

Unable to demonstrate purposeful availment or the requisite nexus between their claims, the New Jersey contacts, and the forum, plaintiffs' jurisdictional theory premised on minimum contacts falters on both elements and cannot sustain specific jurisdiction over PropStream.

---

[2] This is all hypothetical because PropStream never received any of the 19,399 takedown requests purportedly sent in January 2024.  *See* Tepfer Decl. ¶ 14.

## II.   THE "EFFECTS" TEST DOES NOT APPLY BUT, IN ANY EVENT, PROVIDES NO BASIS FOR JURISDICTION OVER PROPSTREAM

This Court already effectively ruled that the *Calder* "effect" test is inapplicable when it determined that Daniel's Law sounds in negligence – and that it is *not* an intentional tort. That ruling ends this inquiry. But even if the Court were to entertain this theory, plaintiffs cannot meet the elements necessary to establish specific jurisdiction over PropStream under the "effects" test – particularly, that PropStream expressly aimed its alleged tortious conduct at New Jersey.

### A.   The Claims Asserted Are Not Intentional Torts

The *Calder* "effects" test is inapplicable because it only applies to intentional torts. *See Hasson*, 114 F.4th at 187 (explaining that the effects test "requires a plaintiff to plead facts establishing that, [*inter alia*,] the defendant committed an intentional tort"). This Court has held that Daniel's Law should be construed using a *negligence* standard – and, therefore, it is not an intentional tort. *See* ECF No. 29 at 39. Plaintiffs' argument effectively asks the Court to revisit its decision – despite the fact that plaintiffs previously asked the Court, in an effort to save Daniel's Law from constitutional scrutiny, to assign a negligence standard to the statute. *See* ECF No. 29 at 35 ("Plaintiffs…counter that the standard of liability is negligence."). Now, plaintiffs—in an attempt to have its cake and eat it too—misread this Court's Opinion to create *two* standards within the statute:  (1) "an intentional act of disclosure," and (2) "negligen[ce] in reviewing and responding to received

11

nondisclosure requests." Opp. at 9. But that is not what this Court decided. Rather, the Court ruled that "Daniel's Law must be read as imposing liability only if a defendant unreasonably disclosed or made available the home addresses and unlisted telephone numbers of covered persons after the statutory deadline had expired." *See* ECF No. 29 at 39.

Regardless, plaintiffs' attempt to fuse these two standards makes no sense. These standards are not interchangeable. "[N]egligence and intent are mutually exclusive grounds for liability." *Williams v. Flat Cay Mgmt., LLC*, 2023 U.S. Dist. LEXIS 45245, at *22-23 (D.V.I. Mar. 17, 2023) (quoting *Ryan v. Napier*, 425 P.3d 230, 236 (Ariz. 2018)); *see also Moran v. Hawthorne Police Dep't*, 2025 U.S. Dist. LEXIS 48794, at *11-12 (D.N.J. Mar. 18, 2025) ("Courts have repeatedly dismissed negligence claims where the underlying conduct involves an intentional act."). And where regulations have attempted to mix the two concepts, New Jersey courts have appropriately struck them down as "confusing." *See In re N.J.A.C. 12:17-2.1*, 450 N.J. Super. 152, 173 (App. Div. 2017) (striking portion of regulation that "confusingly blends concepts of negligence with intentional wrongdoing that cannot be sensibly understood or harmonized.").

This Court has already ruled that Daniel's Law is construed under a negligence standard. Notwithstanding plaintiffs' attempt to inject confusion into that decision, the *Calder* "effects" test simply does not apply.

12

**B.    Plaintiffs Fail to Demonstrate That Any Alleged Tortious Conduct by PropStream Was Expressly Aimed at New Jersey**

Even if *Calder* could somehow apply, plaintiffs fail to demonstrate that PropStream expressly aimed the alleged tortious conduct at New Jersey. As the Third Circuit explained, "the effects test prevents a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state if the defendant did not expressly aim his conduct at that state." *Marten*, 499 F.3d at 297. The issue is not "where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014) (emphasis added). "There is an important distinction between intentional activity which foreseeably causes injury in the forum and intentional acts specifically targeted at the forum." *Narco Avionics, Inc. v. Sportsman's Market, Inc.*, 792 F. Supp. 398, 408 (E.D. Pa. 1992). In order to satisfy this element, plaintiffs must show that the intentional act was "taken for the very purpose of having an effect" in the forum. *Id.* Plaintiffs have made no such showing.

According to plaintiffs, PropStream expressly aimed its conduct at New Jersey by "disclosing or continuing to disclose protected information that [it] knew concerned New Jersey residents."[3] Opp. at 17. But "knowledge that the plaintiff is

---

[3] Notably, there is no allegation in the Complaint that the 19,399 individuals that allegedly sent PropStream non-disclosure requests are New Jersey residents. A

located in the forum…alone is insufficient to satisfy the targeting prong of the effects test." *IMO Indus. v. Kiekert AG*, 155 F.3d 254, 266 (3d Cir. 1998). "A court cannot automatically infer that a defendant expressly aimed its tortious conduct at the forum from the fact that the defendant knew that the plaintiff resided in the forum." *Walburn v. Rovema Packaging Machs., L.P.*, 2008 U.S. Dist. LEXIS 25369, at *22 (D.N.J. Mar. 28, 2008). Thus, PropStream's purported knowledge that the information related to New Jersey residents is wholly insufficient to establish the "expressly aiming" prong.

Plaintiffs go on to argue that the "expressly aiming" element is satisfied by (1) the ability of PropStream's website to conduct filtered searches for New Jersey properties, (2) PropStream's intentional acquisition of New Jersey data, and (3) PropStream's subscribers with New Jersey billing addresses and revenue derived from those subscriptions.  However, this element requires plaintiffs to show that PropStream "expressly aimed [its] ***tortious*** conduct at the forum." *Hasson*, 114 F.4th at 187 (emphasis added). "Aiming non-tortious conduct at the forum is insufficient." *Soelect, Inc. v. Hyundai Motor Co.*, 2024 U.S. Dist. LEXIS 172599, at *21 (N.D.

---

"covered person" under Daniel's Law applies to "formerly active" and "retired" persons who may no longer reside in the state. As such, there is no requirement in Daniel's Law that a covered person can only request the non-disclosure of New Jersey home addresses. In fact, several named plaintiffs do not even allege that they live in New Jersey. *See, e.g.*, Compl. ¶¶ 15, 17, 22-24.  The record is entirely devoid of any evidence to demonstrate that all of the information that was allegedly wrongfully disclosed is about New Jersey residents.

Cal. Sep. 24, 2024).  Of course, none of this constitutes tortious conduct, much less tortious conduct expressly aimed at New Jersey.  *See Ciolli v. Iravani*, 651 F. Supp. 2d 356, 372 (E.D. Pa. 2009) ("attendance at the meeting was not tortious and thus cannot establish specific jurisdiction under the effects test.").

The only claim of tortious conduct—PropStream's alleged disclosure of protected information following the alleged receipt of plaintiffs' non-disclosure requests (assuming this even constitutes tortious conduct)—would not have occurred in New Jersey at all.  Those requests would have been transmitted to servers that PropStream maintains outside of New Jersey and—had such requests been received (they were not) —those requests would have been addressed by personnel employed outside of New Jersey. *See* Tepfer Decl. ¶¶ 6, 8, 14.

## <u>CONCLUSION</u>

For all of the forgoing reasons, PropStream respectfully submits that the Motion to Dismiss for Lack of Personal Jurisdiction should be granted.

Dated: March 2, 2026
Newark, New Jersey

    *s/ Joshua R. Elias*
Frederick W. Alworth
Joshua R. Elias, Esq.
**FBT GIBBONS LLP**
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4500
falworth@fbtgibbons.com
jelias@fbtgibbons.com
*Attorneys for Defendant Equimine, Inc.*

15