

**Joshua R. Elias**
Partner
+1 973.596.4517 (t)
+1 973.639.6351 (f)
jelias@fbtgibbons.com

April 29, 2026

*VIA ECF*

Honorable Harvey Bartle III, U.S.D.J.
United States District Court
    for the Eastern District of Pennsylvania
16614 U.S. Courthouse
601 Market Street
Philadelphia, Pennsylvania  19106

> Re:    *Atlas Data Privacy Corp., et al. v. Equimine, Inc.*
>           <u>**Civil Action No. 24-cv-4261 (D.N.J.)**</u>

Dear Judge Bartle:

This Firm represents Defendant Equimine, Inc. d/b/a PropStream ("PropStream") in the above-referenced matter.  We write to request that the Court seal limited portions of its opinion deciding several motions to dismiss for lack of personal jurisdiction (the "Opinion") which disclosed confidential information that this Court has ordered to be sealed.  For the reasons that follow, it is respectfully requested that the Court seal the Opinion and replace it on the various dockets where the Opinion has been posted with the attached, redacted version.

On March 16, 2026, PropStream filed a Motion to Seal to protect PropStream's confidential and proprietary information relating to its datasets, data volume, data sources, vendors/third-party providers and the number of its regional subscribers, all of which was disclosed in connection with the briefing on PropSteam's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2) ("Motion to Dismiss").  On April 27, 2026, the Court granted PropStream's Motion to Seal, concluding that "PropStream has met its burden of showing good cause to seal PropStream's subscriber information, third-party service providers, datasets, data volume and/or data sources," and finding that "there is a legitimate interest in preventing the public disclosure of the sensitive business information." *See* Doc. No. 105.  The Court determined that the Motion to Seal "satisfies the standards set forth in Local Civil Rule 5.3." *Id.*

On March 18, 2026, while PropStream's Motion to Seal was still pending, the Court issued the Opinion on the Motion to Dismiss.  It has come to PropStream's attention that the Court's

Honorable Harvey Bartle III, U.S.D.J.
April 29, 2026
Page 2

Opinion disclosed information that was the subject of PropStream's Motion to Seal.  *See* Doc. No. 100.  More specifically, the Opinion disclosed information on PropStream's data sources, data volume and subscriber information – the disclosure of which this Court has already found "could reasonably be expected to cause competitive harm and adversely affect PropStream's market position in the industry," and "would result in a clearly defined and serious injury by providing competitors an unfair market advantage."  Doc. No. 105 at 6, 7.

Thus, consistent with the Court's order on the Motion to Seal, PropStream respectfully requests that the Court seal the Opinion on the Motion to Dismiss and replace it with the redacted version attached hereto as Exhibit A.  Further, given that the Opinion was filed in other matters[1], it is respectfully requested that the Court replace the Opinion on those dockets with the attached redacted version as well.  If it would assist the Court, and to the extent a further filing is preferred under Local Civil Rule 5.3(c)(1), PropStream would be happy to re-file its prior sealing application addressing this same material.

We thank Your Honor for your courtesies and attention to this matter.

Respectfully,

*s/ Joshua R. Elias*

Joshua R. Elias
Partner

cc:     All counsel of record (via ECF)

G118218.G110799   4930-1524-5222v1

---

[1] The other matters include:  *Atlas Data Privacy Corporation, et al. v. Quantarium Alliance, LLC, et al.*, Civil Action No. 24-4098; *Atlas Data Privacy Corporation, et al. v. Melissa Data Corp., et al.*, Civil Action No. 24-4292; *Atlas Data Privacy Corporation, et al. v. Nuwber, Inc., et al.*, Civil Action No. 24-4609; *Atlas Data Privacy Corporation, et al. v. Spy Dialer, Inc., et al.*, Civil Action No. 24-11023; *Atlas Data Privacy Corporation, et al. v. Innovative Web Solutions, LLC, et al.*, 25-1535; *Atlas Data Privacy Corporation, et al. v. PublicNSA, LLC, et al.*, Civil Action No. 25-5989; and *Atlas Data Privacy Corporation, et al. v. True Software Scandinavia AB, et al.*, Civil Action No. 25-7650.

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| QUANTARIUM ALLIANCE, LLC, et al. | : | NO. 24-4098 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| EQUIMINE, INC., et al. | : | NO. 24-4261 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MELISSA DATA CORP., et al. | : | NO. 24-4292 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| NUWBER, INC. et al. | : | NO. 24-4609 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SPY DIALER, INC., et al. | : | NO. 24-11023 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| INNOVATIVE WEB SOLUTIONS, LLC, et al. | : | NO. 25-1535 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PUBLICNSA, LLC, et al. | : | NO. 25-5989 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| TRUE SOFTWARE SCANDINAVIA AB, et al. | : | NO. 25-7650 |

<u>MEMORANDUM</u>

Bartle, J.                                                      March 18, 2026

        Plaintiffs Atlas Data Privacy Corporation ("Atlas") as well as several named individual plaintiffs allege in each of these cases that defendants have violated a New Jersey statute known as Daniel's Law.  Plaintiffs seek damages.  Before the court are the motions of the defendants to dismiss these actions under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of specific personal jurisdiction.

I

Daniel's Law was enacted by the New Jersey Legislature in the wake of the attempted assassination of United States District Judge Esther Salas.  A disgruntled lawyer appeared at her home, killed her son, and wounded her husband before fleeing.  The assailant had obtained her home address on the internet.

Daniel's Law provides that judges, prosecutors and other law enforcement officers as well as their immediate family members ("covered persons") may request in writing that any person, business, or association not disclose or make available their home addresses and unpublished telephone numbers.

The person, business or association shall comply with the request not later than ten business days after receiving notification.  For failure to comply, Daniel's Law provides for actual damages but not less than liquidated damages at the rate of $1,000 per violation and punitive damages for willful or reckless disregard of the law.

Daniel's Law authorizes covered persons to assign their claims.  In these eight cases, thousands of covered persons have made assignments to Atlas whose website they used to notify defendants to cease disclosure of their personal contact information.

-3-

II

Plaintiffs have the burden of proving the existence of specific personal jurisdiction.  See O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007).  The court allowed discovery on this issue.  The discovery establishes the following as to the business of the defendants and their contacts with the State of New Jersey.

Quantarium Alliance, LLC and Quantarium Group, LLC (collectively, "Quantarium") are incorporated in Delaware with their principal place of business in the state of Washington.  Quantarium operates a data analytics platform that provides its users with information on real properties throughout the country.  The reports include such information as real estate valuations, property details, market trends, addresses, and ownership records.  They do not include phone numbers of property owners.

Quantarium obtains information on New Jersey properties as well as properties throughout the country from multiple data providers and public sources.  Quantarium's reports are available to anyone who purchases them, and it has previously sold reports to customers with business addresses in New Jersey.  It does not track whether purchased reports contain information on residents of New Jersey.

-4-

Equimine, Inc. ("Equimine") is incorporated in and has its principal place of business in California.  It operates a subscription-based web application called PropStream.  Like Quantarium, the website furnishes users with information on real properties throughout the country.  The website displays ownership records, but it does not include phone numbers of property owners.

Equimine maintains real property information on ███████████████████ parcels in New Jersey.  It obtains this information from a third-party data source, █████████████. ████████████ gathers this information from public records. Equimine's website is available nationwide, including to its ████████████████ paying users with New Jersey billing addresses.

Melissa Data Corporation ("Melissa Data") is incorporated and has its principal place of business in California.  Melissa Data offers multiple products on its website.  These products allow users to verify and obtain contact information for individuals.  For example, Melissa Lookups allows a user to enter information about an individual, such as the individual's name.  The user is then provided additional information, including the individual's address and phone numbers.  Another product, Melissa Direct, generates

mailing lists using criteria specified by the user.  Users must pay to view this information.

Melissa Data maintains data on approximately 5.2 million households in New Jersey.  It acquires this information from third-party data providers.  At least one of these data providers supplied information collected from public records.  At least 701 users with New Jersey addresses used Melissa Data's various products between December 1, 2023 and April 30, 2025.  While less than 5% of Melissa Data's total revenue came from these New Jersey customers, this equates to approximately $2.1 million.  Additionally, Melissa Data has marketed its website and services to individuals associated with New Jersey addresses by sending physical and electronic catalogs.  It also contracted with marketing companies based in New Jersey to distribute these materials nationwide.  Furthermore, Melissa Data's privacy notice, which is published on its website, includes information specific to New Jersey.

Nuwber, Inc. ("Nuwber") is incorporated in and has its headquarters in Virginia.  Nuwber operates a "people search" website, which provides users with information about a person about whom the user inquires.  A user can supply a person's name, phone number, address, or email address to initiate the search.  Nuwber's website then makes available additional information.  Users who pay for subscriptions can view all of

-6-

this additional information, including street addresses, phone numbers, and names of relatives associated with the person. Users can view some of this information, including some addresses associated with the person and names of relatives, without buying a subscription.

Nuwber has in its possession information associated with over eight million individuals with New Jersey addresses. It collects this data from both public records and consumer databases. Nuwber's reports are available to New Jersey residents, and its paying users include such residents.

Spy Dialer, Inc. ("Spy Dialer") is incorporated in and has its principal place of business in California. It has a "reverse lookup" website, spydialer.com. It provides the user with information about a particular person about whom the user is inquiring. The user can input phone numbers, addresses, emails, or names into the website. The website then yields different categories of information based on what the user seeks. For example, when a user inputs a phone number, Spy Dialer's website provides the name of the individual associated with the phone number. When a user provides an individual's name, Spy Dialer shows the individual's landline phone numbers, part of the individual's cell phone number, and the city and state in which the individual lives. The use of the website is free.

-7-

Spy Dialer obtains the information available on its website through Open Data People, Inc., a data aggregator incorporated in California.  Open Data People gathers information, including that of New Jersey residents, from publicly available records.

Spy Dialer does not have any contracts or business relationships with New Jersey companies or government entities. However, the website can be and has been freely accessed by individuals in New Jersey.  Spy Dialer also appears to publish a privacy disclaimer specifically for New Jersey residents on its website. It states that the data it shares is "publicly available information and is exempt from the New Jersey Privacy Act under Chapter 266."  In early 2023, Spy Dialer also paid social media content creators to create promotional posts about it, which can be viewed by anyone, including those in New Jersey.

Innovative Web Solutions, LLC ("Innovative") is registered in and has its headquarters in Minnesota.  Its sole product is a people search website, National Cellular Directory. The website allows users to input an individual's name or a phone number.  Users may then select from a variety of reports generated by National Cellular Directory.  These reports contain additional information associated with the individual or phone number, such as names, phone numbers, addresses, and names of

relatives.  Users must generally pay to receive a report. However, Innovative allows everyone who has created a National Cellular Directory account to run free searches for one hour every day.

Innovative obtains the data it shows on its website, including that of New Jersey residents, from multiple third-party data providers.  National Cellular Directory is available to New Jersey residents.  In 2024, 499 active users of the website had New Jersey zip codes.  These users generated $35,103.31 in revenue, which constitutes 2.669% of Innovative's total gross revenue.  Innovative also published an article describing national scam call and fraud trends, which included a section on fraud in New Jersey.

PublicNSA, LLC ("PublicNSA") is a limited liability company registered in and with its principal place of business in Florida.  It is a data driven solutions provider.  It "licenses" or makes available data on individuals to marketing and modeling companies.  The data includes names, telephone numbers, and home addresses.  Users can obtain information specifically related to New Jersey residents.  Unlike the websites described above, PublicNSA's website merely gives information about its products.  Once PublicNSA and a potential client agree on the terms of service and enter into a written contract, PublicNSA supplies the client with the requested data.

-9-

PublicNSA has home addresses of approximately 12.2 million adults in New Jersey and phone numbers for 60% of those adults in its database.  PublicNSA has received information such as telephone numbers and home addresses of New Jersey residents from two companies based in New Jersey.  It uses this information to verify that PublicNSA's own data is accurate.

Four of PublicNSA's 165 customers are or were based in New Jersey.  Two of these four customers are the companies from which PublicNSA received information.  PublicNSA had no active engagements with those four New Jersey customers in January 2024.  PublicNSA's privacy policy also summarizes PublicNSA's handling of requests from New Jersey users.  It states, in relevant part:

> We have received 34,520 requests to delete. We complied in whole or in part with 34,508 and denied 12 of these requests …  The number of requests in which deletion was not required in whole, or in part, under each provision in Daniel's Law is a New Jersey state statute (N.J.S.A. § 56:8-166.1 et seq.), enacted on November 20, 2020 (effective December 10, 2021) was 3261 records.  The median number of days within which we have substantively responded to these requests is 5 days.

Finally, True Software Scandinavia AB ("True Software") is a Swedish company with its principal place of business in Stockholm.  True Software developed and operates the Truecaller mobile application ("Truecaller").  The application

-10-

identifies for users their unknown callers.  It additionally flags spam callers and allows users to block additional calls from that source.  Premium users can also input a phone number into the application's phone number lookup tool, which names the caller and discerns whether the number is associated with fraud. The user may request an individual's contact details as well, but the user will only receive that information if the individual searched agrees.

The data available on Truecaller is either voluntarily given by users or obtained from public directories.  The only home addresses displayed are those of paying users who choose to disclose their addresses on Truecaller.  Crucially, an individual's phone number is only identified if the individual chooses to disclose it, if the individual calls a Truecaller user himself or herself, or the user inputs the individual's telephone number that is already in the user's possession. However, True Software only serves the user who is a resident of the European Union, Norway, Switzerland, Iceland, Liechtenstein, and the United Kingdom.  According to True Software, it would simply show information of New Jersey residents if they called a Truecaller user in Europe and the call was flagged as spam.

Any information maintained by True Software is not available to New Jersey residents.  A different company, Truecaller International LLP, provides services to application

-11-

users in the United States pursuant to a licensing agreement it has with True Software.  Truecaller International also maintains the database containing information related to any New Jersey residents who use Truecaller.  True Software admits that it could "in certain instances" search Truecaller International LLP's database for New Jersey contact information.

III

The plaintiffs first assert that this court may exercise specific personal jurisdiction over the defendants under the "effects" test of <u>Calder v. Jones</u>, 465 U.S. 783 (1984).

In that case, Shirley Jones, an entertainer who resided and worked in California, sued the National Enquirer, its local distributor, and the president-editor and a reporter of the National Enquirer for libel, invasion of privacy and intentional infliction of emotional distress in the Superior Court of California.  The two individual defendants, who lived and worked in Florida and had little personal contact with California, moved to dismiss for lack of personal jurisdiction. The Supreme Court upheld the decision of a California appellate court that personal jurisdiction existed.  The Supreme Court explained that "California is the focal point both of the story and of the harm suffered.  Jurisdiction over [defendants] is therefore proper in California based on the 'effects' of

-12-

[defendants'] Florida conduct in California." Id. at 789. The individual defendants knew that "the brunt of the harm" caused by the article they wrote and edited in Florida would occur in California where plaintiff lived and worked and where the National Enquirer had its largest circulation. Id. at 789-90. California, the Court noted, was "the focal point both of the story and of the harm suffered." Id. at 789.

Our Court of Appeals in IMO Industries, Inc. v. Kiekert, 155 F.3d 254, 265-66 (3d Cir. 1998), set forth the three requirements that a plaintiff must meet to benefit from the "effects test" of Calder:

> (1)  The defendant committed an intentional tort;
>
> (2)  The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;
>
> (3)  The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity[.]

The most recent discussion of the Calder test by our Court of Appeals occurred in Hasson v. FullStory, Inc., 114 F.4th 181 (3d Cir. 2024), which involved two cases consolidated for review. In one of the cases, plaintiff Hasson brought a putative class action against FullStory, Inc. which provided a

-13-

code used by Mattress Firm on its website to collect personal information about its website users.  The information was collected without the knowledge or consent of the user from the moment he or she accessed the website.  Hasson claimed that FullStory's actions violated the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. §§ 5701-82, and invaded his common law right to privacy.

In the second case, plaintiff Schnur, a Pennsylvania resident, sued Papa Johns in a class action for violating Pennsylvania's wiretap law and for invasion of privacy. Plaintiff claimed that Papa Johns had illegally operated the website that deployed the FullStory code into his browser.  Papa Johns maintained approximately eighty-five physical locations in Pennsylvania and regularly marketed and advertised goods and services in Pennsylvania.  Plaintiff also alleged that he had ordered food in the Commonwealth on the Papa Johns website which collected information about him.

In both cases, the defendants moved to dismiss for lack of specific personal jurisdiction.  The Court of Appeals held that plaintiffs in both cases failed to satisfy the Calder test.  The Court explained that in Schnur's case the Papa Johns' website was not expressly aimed at Pennsylvania but was available to all potential customers wherever they may be.  It noted, "a defendant does not expressly target a forum merely by

-14-

operating a website that is accessible there – even when the plaintiff alleges harm in that forum arising out of his engagement with that website." Hasson, 114 F.4th at 190.  Had the website been targeted at Pennsylvania, the result would have been different.  The Court also declined to hold that Papa Johns' use of the FullStory code constituted physical entry into Pennsylvania in that Papa Johns' website had not expressly targeted Pennsylvania.  It was not enough that the data interception occurred in the forum.  Id. at 191.  Finally, the court stated that for the Calder test to be satisfied, plaintiff would have to have alleged that defendant knew a given user was in Pennsylvania before the code was dispatched to the user's browser and then deployed the code based on that information.

In the other case, Hasson, as noted, sued only FullStory, the supplier of the code used on Mattress Firm's website.  The Court applied the same reasoning as it did in Schnur's case to hold that the facts were not sufficient for personal jurisdiction under the "effects test."  FullStory had not expressly aimed the code at Pennsylvania and did not know before the code was dispatched that Hasson would suffer the brunt of the harm caused by tortious conduct in the forum.  Id. at 196.  Compared with the conduct of Papa Johns, FullStory was "a degree removed from the alleged harm."  Id.

-15-

Our Court of Appeals has made it clear that the Calder test cannot be satisfied unless a plaintiff alleges that the defendant has committed an intentional tort.  In Calder, the claims were libel, invasion of privacy and intentional infliction of emotional distress.  465 U.S. at 785.  In IMO, the claim was tortious interference with contractual relations.  155 F.3d at 256.  In Hasson, it was wiretapping and invasion of privacy.  114 F.4th at 187-88; see also Goldfarb v. Kalodimos, 539 F. Supp. 3d 435, 451-52 (E.D. Pa. 2021).  In contrast, the claims alleged here are violations of Daniel's Law not to disclose or make available the home addresses and unlisted phone numbers of covered persons who had made the proper deletion requests in writing.  This court has held that the standard of culpability for violation of Daniel's Law is negligence for actual damages and reckless or willful conduct for punitive damages.  Atlas Data Priv. Corp. v. We Inform, LLC, 758 F. Supp. 3d 322, 340-41 (D.N.J. 2024).  Reckless or willful conduct is not intentional conduct.  The Supreme Court of New Jersey in Blazovic v. Andrich, 590 A.2d 222 (N.J. 1991), set forth the definition of an intentional tort and contrasted it with negligence and wanton or willful conduct.  It explained:

> [I]ntentional wrongdoing [is] "different in degree" from either negligence or wanton and willful conduct.  To act intentionally involves knowingly or purposefully engaging in conduct "substantially certain" to result

-16-

> in injury to another.  Restatement (Second)
> of Torts § 8A comment b (1965).  In
> contrast, wanton and willful conduct poses a
> highly unreasonable risk of harm likely to
> result in injury.  Id. at § 500 comment a.

Blazovic, 590 A.2d at 231.  Daniel's Law does not require intentional wrongdoing for liability to attach, and thus plaintiffs have not met the first requirement of the Calder test.  Specific personal jurisdiction on this basis fails.

IV

The plaintiffs assert in the alternative that the court may exercise specific personal jurisdiction over the defendants based on the traditional purposeful availment test outlined most recently by the Supreme Court in Ford Motor Co. v. Montana Eighth Judicial District Court, 592 U.S. 351 (2021).

For a court to have specific jurisdiction under Ford, the claims must "arise out of or relate to the defendant's contacts with the forum."  Id. at 362 (quoting Bristol-Meyers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty., 582 U.S. 255, 262 (2017)).  "Relate to," the Supreme Court explained, "contemplates that some relationship will support jurisdiction without a causal showing."  Id.  The Court cautioned that it does not mean anything goes and that there are "real limits" in order "to adequately protect defendants foreign to the forum."  Id.  Where a defendant serves a market for a

-17-

product in the forum and the product malfunctions there, the court has specific jurisdiction in that forum.  Id. at 363.

In Ford, the Supreme Court had before it two cases for review.  In one, a driver in Montana died in an accident involving an allegedly defective Ford Explorer automobile.  In the other, a passenger in an allegedly defective Ford Crown Victoria in Minnesota was injured in an accident.  Both lawsuits were filed in the state court.  Ford moved to dismiss each for lack of personal jurisdiction.  It asserted that no causal connection existed between Ford's in-state activity and the claims since the particular vehicles in question had not been manufactured or sold by Ford in those states.  The Supreme Court rejected Ford's position and sustained personal jurisdiction in both cases.  It recounted that Ford had an extensive presence in each state, had availed itself of marketing among other activities, and had sold Explorers and Crown Victorias there. The lawsuits were sufficiently related to Ford's in-state activities in Montana and Minnesota to go forward.  In making this ruling, the Court specifically noted that it was not deciding whether personal jurisdiction would have been proper if Ford had not marketed the specific model in issue, that is Explorers and Crown Victorias, in those states.  Id. at 365.

The Court of Appeals in Hasson also considered the applicability of the Ford test in both cases before it.  As

-18-

previously noted, Schnur had brought a putative class action against Papa Johns for its use of FullStory's code on its website which collects details of information about the way the user interacts with the website.  This collection of information was without the knowledge or consent of the user.  Schnur claimed that Papa Johns engaged in illegal wiretapping and invasion of privacy.

The Court of Appeals recounted that Papa Johns operated eighty-five restaurants in Pennsylvania and regularly marketed and advertised its goods and services within the Commonwealth.  It also regularly sold pizzas and other products to Pennsylvania residents through its website.

The Court wrote that it was a close call whether the claims of Schnur related sufficiently to Papa Johns' in-forum activities so as to allow for specific personal jurisdiction under the Ford test.  Hasson, 114 F.4th at 193.  Ultimately, the Court held that Schnur's claims lacked the strong relationship between Pennsylvania and Papa Johns' use of the FullStory code on its website.  While Ford had promoted its Explorer automobile in Montana and its Crown Victoria automobile in Minnesota, the Court concluded that Papa Johns had not promoted its website as opposed to its products in Pennsylvania.  Id. at 194.

Hasson, in his case, likewise alleged that FullStory engaged in unlawfully wiretapping and invasion of privacy when

-19-

it deployed its computer code to gather personal information including his name, address, e-mail address and payment information while he browsed the website of Mattress Firm. While the Court of Appeals had agreed that the Calder test did not apply, it remanded to the District Court to determine if Hasson had satisfied the Ford test. The Court suggested that the District Court consider FullStory's other forum contacts besides those related to Mattress Firm. Hasson, 114 F.4th at 197.

The court finds defendants Quantarium, Equimine, Melissa Data, Nuwber, Spy Dialer, Innovative, and PublicNSA here purposefully availed themselves of the New Jersey market. These defendants, as part of their businesses, gather information including home addresses and/or unlisted telephone numbers of New Jersey residents. They obtain the information at least in part by paying third parties for it.

Quantarium, Equimine, Melissa Data, Nuwber, Spy Dialer, and Innovative then place that information on their websites. There these defendants sell or make available the information, including the information about New Jersey residents, to their website users who include New Jersey residents. The defendants know or have access to this information before a user accesses the website. The website in Schnur's case was incidental to and separate from Papa Johns'

-20-

product, that is, pizzas which they sell in Pennsylvania.  In contrast, the information collected and made available in New Jersey and elsewhere on defendants' websites constitutes the very product of Quantarium, Equimine, Melissa Data, Number, Spy Dialer, and Innovative.

PublicNSA is in a slightly different category.  It sells to business clients who seek information so as to be able to target potential customers.  While it has a website, the information it sells is not initially available there.  After a client contacts PublicNSA via its website, PublicNSA and the client have discussions about the information needed and then enter into a written contract.  It is only at that point that the information is supplied.  As noted, four of its 165 business clients are in New Jersey.

The plaintiffs must establish that defendants offer "something more" than commercially interactive websites accessible in New Jersey.  Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 452-54 (3d Cir. 2003).  What is "something more" must be decided on a case-by-case basis by evaluating the nature and quality of the contacts.  Id. at 453.  All defendants obtain through third parties information including home addresses and/or unlisted phone numbers of New Jersey residents and offer that information for sale or otherwise to New Jersey residents. The websites of Quantarium, Equimine, Melissa Data, Nuwber, Spy

-21-

Dialer, and Innovative are not simply an electronic means to advertise the goods or services or a means though which users of the website purchase those advertised goods or services.  The websites themselves, as noted, contain and directly make available the defendants' product – the personal information about New Jersey residents to New Jersey residents and to others.  PublicNSA directly provides information to its clients in New Jersey but only after the parties talk about what is to be supplied and then execute a contract.  Plaintiffs have shown the "something more" needed to establish personal jurisdiction over Quantarium, Equimine, Melissa Data, Nuwber, Spy Dialer, Innovative, and PublicNSA beyond mere accessibility of their websites in New Jersey.  See Toys "R" Us, Inc., 318 F.3d at 453-54.

Defendants Quantarium, Equimine, Melissa Data, Nuwber, Spy Dialer, Innovative, and PublicNSA, as previously recounted, gather home addresses and/or unlisted phone numbers of covered persons in New Jersey and make that information available through purchase or otherwise to residents of New Jersey.  If they negligently fail to delete that information after due notice from covered persons, they are violating Daniel's Law.  A violation not only infringes on the privacy of covered persons but also undermines the policy of New Jersey to enhance the safety and security of covered persons and to foster their

-22-

ability to carry out their official duties as part of the justice system without fear of personal reprisal.  See We Inform, LLC, 758 F. Supp. 3d at 331, 337.  These defendants have sufficient minimum contacts with New Jersey so that personal jurisdiction over them comports with traditional notions of fair play and substantial justice.  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  Under the circumstances, defendants should reasonably anticipate being haled into court in New Jersey for violations of Daniel's Law.  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

In sum, defendants Quantarium, Equimine, Melissa Data, Nuwber, Spy Dialer, Innovative, and PublicNSA have purposefully availed themselves of the market in New Jersey.  There is a strong connection between the claims of plaintiffs and the New Jersey contacts of these defendants.  The claims here are closely related to defendants' activities in this forum so that the court may exercise specific personal jurisdiction over them. Ford Motor Co., 592 U.S. at 361-62.

V

Plaintiffs, in contrast, have not established that the court has personal jurisdiction over defendant True Software Scandinavia AB.  It does not possess except possibly in very rare instances any information on covered persons under Daniel's Law.  Nor does it offer Truecaller, its product, to New Jersey

-23-

-24-

residents.  True Software Scandinavia only provides Truecaller

to users in European countries and licenses Truecaller to a

third party, Truecaller International LLP, that services users

in the United States.  True Software has not purposefully

availed itself of doing business in New Jersey, and plaintiffs'

claims simply do not relate to any contacts it has with the

forum.  The court will dismiss the action against True Software

for lack of specific personal jurisdiction.


                              BY THE COURT:


                              /s/  Harvey Bartle III
                                                      J.